UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN L. MILLER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF THE STATE OF CALIFORNIA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>　　　　Defendants. | Case No.  1:21-cv-00176-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(ECF No. 18)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.     Background**

Plaintiff Kevin L. Miller ("Plaintiff") is a former pretrial detainee and current state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action under 42 U.S.C. § 1983.  This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

On April 21, 2021, the Court issued a screening order granting Plaintiff leave to file a first amended complaint or a notice of voluntary dismissal within thirty (30) days.  (ECF No. 18.)  The Court expressly warned Plaintiff that the failure to file an amended complaint in compliance with the Court's order would result in a recommendation for dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim.  (*Id.* at 10.)

The deadline has expired, and Plaintiff has failed to file a first amended complaint or otherwise communicate with the Court.

**II.     Failure to State a Claim**

**　　A.     Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity.  28 U.S.C.

1

1 § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous
2 or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary
3 relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C.
4 § 1915(e)(2)(B)(ii).

5     A complaint must contain "a short and plain statement of the claim showing that the
6 pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not
7 required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere
8 conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*
9 *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as
10 true, courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*,
11 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

12     To survive screening, Plaintiff's claims must be facially plausible, which requires
13 sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable
14 for the misconduct alleged. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss v. U.S. Secret*
15 *Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully
16 is not sufficient, and mere consistency with liability falls short of satisfying the plausibility
17 standard. *Iqbal*, 556 U.S. at 678 (quotation marks omitted); *Moss*, 572 F.3d at 969.

18     **B.**    **Plaintiff's Allegations**

19     Plaintiff is currently incarcerated at Wasco State Prison. At the time of the allegations in
20 the complaint, Plaintiff was housed in the Lerdo Detention Facility ("Lerdo") in Kern County as a
21 pretrial detainee. Plaintiff names the following defendants: (1) Commissioner John Doe, Director
22 of the California Department of Corrections, (2) John Doe, Superintendent/Warden of Kern
23 County Lerdo Detention Facility, (3) Lt. P. Gordon, Lieutenant/Sergeant, (4) Dr. John Doe,
24 mental health doctor/psychologist. Defendants are sued in the individual and official capacities.

25     On January 19, 2021, two inmates from F-310 tested positive for COVID-19. They were
26 taken within an hour to the infirmary for quarantine. Plaintiff alleges "we" were only allowed 30
27 minutes for 1 cell shower, use of phone, clean cell and throw out trash. There's no effort to
28 redline or flag the contaminated cell or decontaminate it. Between 1–2 days later, they moved

another inmate into that cell. There is no testing for inmates. Plaintiff had been in Lerdo for 120 days and was never tested. Plaintiff was told by Officer Valencia that COVID-19 tests are very expensive to administer. Plaintiff feels hopeless. Inmates are not being transported to receiving and reception and are not getting adequate percentage of days because "we are doing long term in County." Since Plaintiff is "CDCR Property" he is not getting the programs he would get while at County. He does not get adequate mental health care. Plaintiff alleges that he has paranoia schizophrenia, schizophrenia-affective disorder, insomnia, and bipolar disorder. Dr. Bear was the last mental health doctor who diagnosed him. Plaintiff alleges he is not getting adequate amount of medication. Plaintiff has not seen a doctor in 45 days while in quarantine. Plaintiff alleges he was not prescribed what the doctor ordered at his last visit.

Plaintiff alleges the negligence of the commissioner, warden, doctor regarding COVID-19 decontamination, inadequate medical/mental health care, unsanitary and hazardous environment because of no efforts of decontamination violated due process and negligence.

Plaintiff request declaratory and injunctive relief. Plaintiff also seeks compensatory and punitive damages.

**C.    Discussion**

Plaintiff's complaint fails to comply with Federal Rule of Civil Procedure 8 and fails to state a cognizable claim under 42 U.S.C. § 1983.

**1.    Federal Rule of Civil Procedure 8**

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While factual allegations are accepted as true, legal conclusions are not. *Id.*; *see also Twombly*, 550 U.S. at 556–57.

///

    Although Plaintiff's complaint is short, it is not a plain statement of his claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. Plaintiff's allegations must be based on facts as to what happened and not conclusions. In particular, Plaintiff attributes all COVID issues to the "commissioner, warden, doctor," but does not state what each person did or did not do which violated his constitutional rights. Plaintiff must name each person he believes violated his constitutional rights.

### 2.   Supervisor Liability

    Insofar as Plaintiff is attempting to sue Defendant John Does Commissioner, Warden or Lieutenant, or any other defendant, based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676–77; *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).

    Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989*); accord Starr v. Baca*, 652 F.3d 1202, 1205–06 (9th Cir. 2011); *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d at 570. Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1970).

    To prove liability for an action or policy, the plaintiff "must . . . demonstrate that his deprivation resulted from an official policy or custom established by a . . . policymaker possessed with final authority to establish that policy." *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between

4

1   such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v.*
2   *Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir.
3   1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in
4   civil rights violations are not sufficient. *See Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir.
5   1982).

6       It is unclear the conduct Plaintiff alleges the supervisory defendants engaged in that
7   violated his constitutional rights. Plaintiff has failed to allege direct participation in the alleged
8   violations. Plaintiff talks about failings in transportation and unclean cells and showers. Plaintiff
9   has failed to allege the causal link between each defendant and the claimed constitutional
10  violation which must be specifically alleged. He does not make a sufficient showing of any
11  personal participation, direction, or knowledge on the defendants' part regarding any other prison
12  officials' actions. Plaintiff has not alleged that the supervisory defendants personally participated
13  in the alleged deprivations.

14      In addition, it is unclear what the policy is that is purportedly at issue. Plaintiff has failed
15  to "demonstrate that his deprivation resulted from an official policy or custom established by
16  a . . . policymaker possessed with final authority to establish that policy."

17          **3.    Official Capacity**

18      Plaintiff has sued each of the defendants in their official capacities. A suit against a public
19  employee in his official capacity is equivalent to a claim against the employer, *Kentucky v.*
20  *Graham*, 473 U.S. 159, 166 (1985); *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cty.*
21  *Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008), cert. denied, 555 U.S. 1098 (2009). It appears
22  the employer of the defendants is Kern County. To the extent that plaintiff is purporting to state a
23  federal civil rights claim against Kern County, the Supreme Court held in *Monell v. New York*
24  *City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), that "a local government may not be sued
25  under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when
26  execution of a government's policy or custom, whether made by its lawmakers or by those whose
27  edicts or acts may fairly be said to represent official policy, inflicts the injury that the government
28  as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694; *see also Connick v.*

*Thompson*, 563 U.S. 51, 60 (2011) ("under § 1983, local governments are responsible only for their own illegal acts" (emphasis in original, internal quotation marks omitted)). In order to state a claim arising from the execution of a local entity's policy or custom, Plaintiff must set forth factual allegations to show that the execution of a specific policy, ordinance, regulation, custom or the like was the "actionable cause" of any alleged constitutional violation. *See, e.g.*, *Tsao v. Desert Palace, Inc.,* 698 F.3d 1128, 1146 (9th Cir. 2012) ("a plaintiff must also show that the policy at issue was the 'actionable cause' of the constitutional violation, which requires showing both but-for and proximate causation"). Further, a *Monell* claim may not be premised on an isolated or sporadic incident. *See, e.g.*, *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy."); *Thompson v. Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) ("Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish custom."), overruled on other grounds, *Bull v. City & Cty. of San Francisco*, 595 F.3d 964, 981 (9th Cir. 2010) (en banc). Plaintiff fails to state a cognizable claim against the defendant in their official capacities. Plaintiff has failed to allege sufficient facts to satisfy the *Monell* requirements, as discussed above.

### 4.     Due Process – Conditions of Confinement and Medical Care

If Plaintiff is not a convicted inmate, the standards are under the Fourteenth Amendment. The Fourteenth Amendment protects the rights of pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004) (quoting *Bell*, 441 U.S. at 535). During the period of detention prior to trial, a pretrial detainee may be properly subject to the conditions of the jail so long as they do not amount to punishment. *Bell*, 441 U.S. at 536–37. "Pretrial detainees are entitled to 'adequate food, clothing, shelter, sanitation, medical care, and personal safety.' " *Alvarez-Machain v. United States*, 107 F.3d 696, 701 (9th Cir. 1996) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1246

(9th Cir. 1982)).

As a pretrial detainee during the relevant time period, Plaintiff's claims concerning his medical care and conditions of confinement arise under the Fourteenth Amendment's Due Process Clause. *See Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). The Ninth Circuit has held that "the proper standard of review" for claims of inadequate medical care for pretrial detainees is "objective indifference." *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1120, 1124–25 (9th Cir. 2018) (extending the "objective deliberate indifference standard" articulated in *Castro* to inadequate medical care); *see also Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019) (noting that *Gordon* "recognized that *Castro*'s objective deliberate indifference standard extends to Fourteenth Amendment claims by pretrial detainees for violations of the right to adequate medical care"). Plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Gordon*, 888 F.3d at 1125.

To state a claim of unconstitutional conditions of confinement or medical care in violation of Due Process against an individual defendant, a pretrial detainee must allege facts that show: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. *Gordon*, 888 F.3d at 1125. Whether the conditions and conduct rise to the level of a constitutional violation is an objective assessment that turns on the facts and circumstances of each particular case. *Id.*; *Hearns v. Terhune*, 413 F.3d 1036, 1042 (9th Cir. 2005).

The Court acknowledges COVID-19 poses a substantial risk of serious harm. *See Plata v. Newsom*, 445 F. Supp. 3d 557, 559 (N.D. Cal. Apr. 17, 2020) ("[N]o one questions that [COVID-19] poses a substantial risk of serious harm" to prisoners.). However, in order to state a cognizable Fourteenth Amendment claim against Defendant John Does Commissioner, Warden or Lieutenant, or any other defendant, Plaintiff must provide more than generalized allegations

7

1  that they have not done enough to control the spread. *See Booth v. Newsom*, No. 2:20-cv-1562
2  AC P, 2020 WL 6741730, at *3 (E.D. Cal. Nov. 17, 2020); *see Blackwell v. Covello*, No. 2:20-
3  CV-1755 DB P, 2021 WL 915670, at *3 (E.D. Cal. Mar. 10, 2021) (failure to state a claim against
4  warden for failure to adequately control the spread of COVID-19 in the prison).

   In the complaint, Plaintiff alleges generalized concerns that he may be exposed to COVID-19 while housed at Lerdo. He alleges that safety recommendations are not being met, and he is not being tested. But such general allegations are insufficient to state a cognizable Fourteenth Amendment claim. In order to state a cognizable claim, Plaintiff must specifically identify a defendant's challenged conduct, explain how such conduct is unreasonable under the circumstances, and describe how such conduct harmed Plaintiff. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) ("A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.") Plaintiff alleges no facts against a properly named defendant that suggest the defendant made an intentional decision with respect to the conditions under which the Plaintiff was confined, which put Plaintiff at substantial risk of suffering serious harm, that the defendant did not take reasonable available measures to abate that risk and that Plaintiff was harmed. To the extent that Plaintiff alleges that his requests went unanswered, he does not state a claim for relief since a prison official's action in reviewing an inmate grievance cannot serve as a basis for liability under Section 1983. *Buckley v. Barlow*, 997 F.2d 494, 495 (9th Cir. 1993).

### 5. State Law Claims

Plaintiff appears to allege state law tort claim for negligence. Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c). The Supreme Court has stated that "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law.  28 U.S.C. § 1367.

Further, the Government Claims Act requires exhaustion of Plaintiff's state law tort claims with the California Victim Compensation and Government Claims Board, and Plaintiff is required to specifically allege compliance in his complaint.  *Shirk v. Vista Unified Sch. Dist.*, 42 Cal. 4th 201, 208–09, 64 Cal. Rptr. 3d 210, 164 P.3d 630 (Cal. 2007); *State v. Super. Ct. of Kings Cty. (Bodde)*, 32 Cal. 4th 1234, 1239, 13 Cal. Rptr. 3d 534, 90 P.3d 116 (2004); *Mabe v. San Bernardino Cty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1111 (9th Cir. 2001); *Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995); *Karim–Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 627 (9th Cir. 1988).  Plaintiff has not alleged compliance with the Government Claims Act.

### 6. Injunctive Relief

Insofar as Plaintiff seeks injunctive relief against jail officials at Lerdo, any such request is now moot because Plaintiff is no longer housed at that facility.  *See Andrews v. Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

## III. Failure to Prosecute and Failure to Obey a Court Order

### A. Legal Standard

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court."  District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal."  *Thompson v. Hous. Auth.*, 782 F.2d 829, 831 (9th Cir. 1986).  A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  *See, e.g., Ghazali v. Moran*, 46

F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260–61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *Henderson v. Duncan*, 779 F.2d 1421, 1423 (9th Cir. 1986); *Carey v. King*, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B.     Discussion**

Here, Plaintiff's first amended complaint is overdue, and he has failed to comply with the Court's order. The Court cannot effectively manage its docket if Plaintiff ceases litigating his case. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. *Anderson v. Air W.*, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. *Pagtalunan v. Galaza*, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. *Ferdik*, 963 F.2d at 1262; *Malone*, 833 at 132–33; *Henderson*, 779 F.2d at 1424. The Court's April 21, 2021 screening order expressly warned Plaintiff that his failure to file an amended complaint would result in a recommendation of dismissal of this action, with prejudice, for failure to obey a court order and for failure to state a claim. (ECF No. 18, p. 10.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court that would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

**IV.     Conclusion and Recommendation**

Accordingly, the Court finds that dismissal is the appropriate sanction and HEREBY RECOMMENDS that this action be dismissed, with prejudice, for failure to state a claim pursuant to 28 U.S.C. § 1915A, for failure to obey a Court order, and for Plaintiff's failure to prosecute this action.

These Findings and Recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 9, 2021**                                    /s/ *Barbara A. McAuliffe*
                                                              UNITED STATES MAGISTRATE JUDGE

11